# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

COLTON JACOB, ON BEHALF §
OF THEMSELF AND THOSE §
SIMILARLY SITUATED; AND §
VINCENT CONNOR FUCHS, ON §  No. 1-23-CV-01179-DII
BEHALF OF THEMSELF AND §
THOSE SIMILARLY SITUATED; §
*Plaintiffs* §
§
**v.** §
§
STEWARD PARTNERS GLOBAL §
ADVISORY, LLC,  STEWARD §
INVESTMENT SOLUTIONS, LLC, §
*Defendants* §

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Steward Partners Global Advisory, LLC ("SPGA") and Steward Partners Investment Solutions, LLC's ("SPIS") (collectively, "Defendants") Motion to Compel Arbitration, Dkt. 22. After reviewing the briefing and relevant caselaw, the undersigned recommends that the District Judge deny the motion.

## I.    BACKGROUND

On or about October 20, 2020, Colton Jacob and Vincent Connor Fuchs (collectively, "Plaintiffs") sold their financial advisory practice, now known as Praetorian Private Wealth, to SPGA. Dkt. 25-2, at 5. As part of their transition to SPGA, Plaintiffs executed Steward Partners Management Holdings, LLC's ("SPMH")

1

Operating Agreement, which provided that disputes ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████ Dkt. 24-2, at 5.

Plaintiffs also executed FINRA Form U-4, in which they ██████████████

████████████████████████████████████████████████████████████

████████ Dkt. 22, at 2. Specifically, the Form U-4 provided that Plaintiffs "██████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ "

Dkt. 22, at 159.

In October 2020, Plaintiffs executed Financial Advisor Employment Agreements with Steward Partners and its affiliates ("2020 Employment Agreements"). Dkt. 22, at 3. The 2020 Employment Agreements set forth Plaintiffs'

████████████████████████████████████████████████████████████

████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

2



*Id.* at 3.

In May 2022, the parties signed an Asset Growth Agreement and Equity Transfer Agreement ███████████████████████████████████ ████████████████████████████ and incorporating the Operating Agreement. *Id.* The Asset Growth Agreement references ████████████████████████ ████████████████████████████████ the parties were required to sign. *Id.* One of those appendices is an Equity Transfer Agreement. *Id.* at 6. Neither the Asset Growth Agreement nor the Equity Transfer Agreement contain an arbitration or venue clause, but instead contain provisions that the parties agree to be governed by the "█████████████████████████████." *Id.*

In addition, the parties executed various loan agreements and amendments. *Id.* The most recent 2022 Financial Advisor Loan Assumption Agreement provided that all claims concerning that agreement ████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████. *Id.* The Update to Schedule A of the 2022 Loan Agreement also referenced a Bonus Agreement, which provided that ████████████████████████ ██████████████████████. *Id.* at 7.

Plaintiffs had previously received and signed various agreements included in a 2020 Raymond James Affiliation Loan & Bonus Package, as well as an October 1,

3

2021, Amendment to the Loan Agreement (collectively, "RJ Loan Agreements"). *Id.*



" *Id.* at 7-8.

The parties also executed a 2022 Bonus agreement which provided that

" *Id.* at 8. That agreement also provided

that it is "

." *Id.* It further provided that disputes "

" and that "

" *Id.*

In May 2022, Plaintiffs executed new at-will Financial Advisor Employment

Agreements (the "2022 Employment Agreements"), which replaced and superseded

the 2020 Employment Agreements. Dkt. 22, at 4. The 2022 Employment Agreements state:



*Id.* at 5; Dkt. 24-2, at 9.

In September 2023, Plaintiffs brought a putative class action against Defendants, alleging violations of the Fair Labor Standards Act ("FLSA"). Dkt. 14, at 1-2. Defendants filed their Motion to Compel Arbitration in January 2024, Dkt. 22, which is before the undersigned for consideration.

## II.    LEGAL STANDARDS

The Federal Arbitration Act ("FAA") establishes "a liberal federal policy favoring arbitration agreements" and "requires courts to enforce agreements to arbitrate." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012) (quoting *Moses*

*H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). "The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. Of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (internal quotations and citations omitted). Thus, the FAA was intended "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Bell v. Koch Foods of Miss., LLC*, 358 F. App'x 498, 500-01 (5th Cir. 2009) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22).

When deciding whether the parties agreed to arbitrate a certain matter, courts generally apply ordinary principles that govern the formation of contracts to determine whether a valid agreement to arbitrate exists. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004). "The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence." *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012); *see also Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (holding that the party moving to compel arbitration must make a prima facie initial showing that an agreement to arbitrate exists). Because of the strong presumption in favor of arbitration, the party opposing arbitration bears the burden to demonstrate either that the agreement is invalid or inapplicable. *See, e.g., Carter*, 362 F.3d at 297; *Harrington v. Atlantic Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010); *Hartford Accident & Indem. Co.*

*v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001); *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996). The "presumption of arbitrability" requires that arbitration be compelled unless it may be said with "positive assurance" that the parties' agreement "is not susceptible of an interpretation that covers . . . the dispute." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 589 (1960).

Importantly, "courts must 'construe arbitration clauses as broadly as possible,' and 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 (holding that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *see also Volt Info. Scis., Inc.*, 489 U.S. at 476 (deciding that "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration"); *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) (holding that "ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration"); *Webb*, 89 F.3d at 258 (same); *State of N.Y. v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 61 (2d Cir. 1996) (dictating that a court "will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute").

Once a court has found that a valid and enforceable agreement to arbitrate exists, it is "require[d] to enforce agreements to arbitrate." *CompuCredit*, 132 S. Ct. at 669. The FAA "leaves no place for the exercise of discretion by a district court, but

7

instead mandates that district courts shall direct the parties to proceed to arbitration." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 218 (2002). This interpretative principle reflects the "'healthy regard for the federal policy favoring arbitration.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24); *see also Green Tree Fin. Corp.- Ala. v. Randolph*, 531 U.S. 79, 91 (2000). As a result, "only the most forceful evidence" can defeat a motion to compel arbitration. *United Steelworkers of Am.*, 363 U.S. at 585; see also *CompuCredit*, 132 S. Ct. at 669. In accordance with the FAA, if a litigant in a court proceeding refuses to arbitrate a dispute within the scope of a valid arbitration agreement, a judicial order compelling arbitration is mandatory. *See* 9 U.S.C. § 4.

### III.    DISCUSSION

### A.    FINRA Arbitration

Plaintiffs argue that there was not a meeting of the minds between Plaintiffs and Defendants, and accordingly there is no valid and enforceable agreement to arbitrate the complaint. Essentially, Plaintiffs' argument is that their claim involves FLSA's minimum wage requirement, and its resolution does not require the Court to apply FINRA rules and regulations; accordingly, they argue, it is not a dispute "████████████████████████████████████" which the parties agreed "████████████████████████████████████████." Dkt. 22, at 68. Accordingly, Plaintiffs contend, the parties have not reached an

agreement with respect to the arbitration of FLSA claims, and the provisions conflict such that there can be no "meeting of the minds."

Specifically, Plaintiffs point out that the Wealth Manager Guide—████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████—contains no arbitration provision. The Asset Growth Agreement and Equity Transfer Agreement—██████████████████████████████████████

██████████████████████████████████████████—likewise contain no arbitration provision but incorporate by reference the terms of the Operating Agreement and others to be executed. Both the Operating and Employment Agreements state that "████████" should be arbitrated under either FINRA or the AAA. But the Bonus Agreement, ██████████████████████████████████

████████, suggests that FLSA claims are carved out and not subject to its arbitration provision. *See* Dkt. 24-2, at 8 (2022 Bonus Agreement providing that, even though Plaintiffs' compensation included a bonus as a component of pay, the 2022 Bonus Agreement is ████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████). Thus, Plaintiffs contend, these provisions materially conflict and preclude a meeting of the minds.

A contract is formed when at least two parties reach a "meeting of the minds" on all essential terms of the contract. *Paragon Asset Co. Ltd. v. Gulf Copper & Mfg. Corp.*, 622 F. Supp. 3d 360, 410 (S.D. Tex. 2022). Essential terms are those that

parties would reasonably regard as "vitally important ingredient[s]" of their bargain. *Neeley v. Bankers Tr. Co.*, 757 F.2d 621, 628 (5th Cir. 1985). Critically, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *O'Shaughnessy v. Young Living Essential Oils, L.C.*, 810 F. App'x 308, 311 (5th Cir. 2020) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). And where conflicting details in multiple provisions indicate there is no meeting of the minds with respect to arbitration, an arbitration agreement is not enforceable under basic contract principles. *Young Living*, 810 F. App'x at 312.

The Fifth Circuit's precedent in *O'Shaughnessy v. Young Living Essential Oils, L.C.*, is instructive. There, a Member Agreement signed by distributors in a multi-level marketing company contained a "Jurisdiction and Choice of Law" clause which provided that jurisdiction and venue would be in state and federal courts located in Utah for "any legal action." 810 F. App'x at 309. The same agreement also incorporated by reference a policies and procedures document which contained an arbitration clause, while a third agreement—a compensation plan—was silent regarding arbitration. *Id.* The defendants sought to compel arbitration based upon the arbitration clause contained in the policies and procedures document. *Id.* at 310. Because the policies and procedures arbitration clause directly conflicted with the Member Agreement's "jurisdiction and choice of law" clause, the district court denied the defendant's motion to compel. *Id.* at 309.

10

On appeal to the Fifth Circuit, the defendant argued the agreements were capable of being harmonized such that the relevant documents "should be read to give effect to all its provisions and to render them consistent with each other" and reconcile "apparently conflicting provisions and attempt[] to give effect to all of them, if possible." *Id.* (quotations omitted). The Fifth Circuit rejected that request and affirmed the denial of the motion, holding that the conflicting provisions were irreconcilable, incapable of harmonization, and thus there was no meeting of the minds with respect to arbitration of the plaintiff's' claim. *Id.* at 314.

So too here. The arbitration, venue, and jurisdiction provisions in the Wealth Manager Guide, Operating Agreement, Asset Growth Agreement, Equity Transfer Agreements, Bonus Agreement, and Employment Agreements materially conflict with each other as to where claims related to the parties' employment relationship should be brought. Accordingly, there is no "meeting of the minds" regarding FINRA arbitration.

## B.    AAA Arbitration

Defendants also argue that, even if Plaintiffs' FLSA claim falls outside of the FINRA arbitration clause, the Court should nevertheless enforce arbitration under the AAA arbitration clause in the Employment Agreement. *See* Dkt. 22, at 5 (2022 Employment Agreement provides that

████████████████████████████████████████████████████████

███████████████████████ ).

Plaintiffs argue that any agreement to arbitrate these claims is illusory and thus unenforceable as a matter of law. Bilateral agreements are not enforceable where they are supported by illusory promises, *i.e.*, promises that fail to bind the promisor because the promisor retains the unilateral power to discontinue performance or modify terms in its sole discretion. "When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation, and therefore, no contract." *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010). *See Weekley Homes, L.P. v. Rao*, 336 S.W.3d 413 (Tex. App.—Dallas 2011, pet. denied) (arbitration agreement incorporated by reference into handbook was illusory and unenforceable regardless of notice where handbook gave employer "unilateral power, at any time" to modify employment relationship and such power was not expressly limited to prospective modifications); *Tenet Healthcare Ltd. v. Cooper*, 960 S.W.2d 386 (Tex. App.—Houston [14th Dist.] 1998, pet. dism'd w.o.j.) (finding "no mutuality of obligation because appellant's agreement to continue Cooper's employment was illusory from the purported contract's inception" since employer reserved right to rescind or amend it "'as it deemed appropriate' within its sole discretion").

Here, the 2022 Employment Agreement states that it "████████████████

███████████████████████████████████████████." Dkt. 22, at 30. That sounds like a non-illusory agreement. However, other portions of the agreements provide that Defendants retained the sole power to modify the terms of

the employment relationship with respect to compensation, both prospectively and retroactively. For example:



- ███████████████████████████████████████████

  ███████████████████████████████████████████

  ████████████ Dkt. 24-2, at 19.

- ███████████████████████████████████████████

  ███████████████████████████████████████████

  █████████████████████████████████ *Id.*

- ███████████████████████████████████████████

  *Id.*

- ███████████████████████████████████████████

  ███████████████████████████████████████████

  █████████████████████████ *Id.*

- ███████████████████████████████████████████

  ███████████████████████████████████████████

  ███████████████████████████████████████████

  █████████████████████████ *Id.*

Based on this, Plaintiffs argue that Defendants had the sole power to discontinue performance and modify terms in its sole discretion, rendering its promise illusory.

These conflicting provisions—████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████—creates an ambiguity. "When language in a contract is determined to be ambiguous, it is interpreted against the drafter." *Clark v. Power Mktg. Direct, Inc.*, 192 S.W.3d 796, 798 (Tex. App.— Houston [1st Dist.] 2006, no pet.). Here, Defendants drafted the contracts, so the ambiguity over whether the contracts are illusory should be interpreted against them. While Defendants argue that any ambiguity should be construed in favor of arbitration, Dkt. 28-1, at 8, the Federal Arbitration Act's "liberal policy favoring arbitration … does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Young Living*, 810 F. App'x at 311 (quoting *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012)).

Accordingly, the undersigned recommends that the District Judge construe the ambiguities amongst the various agreements in favor of Plaintiffs by holding that the 2022 Employment Agreement was illusory. The undersigned therefore recommends denying Defendant's Motion to Compel Arbitration, Dkt. 22.

## C.    Attorney's Fees

Defendants also request the attorney's fees incurred by bringing this motion. *Id.* at 18-19. Assuming the District Judge adopts the undersigned's recommendation to deny Defendants' motion, they would not be entitled to fees. But even if Defendants were to prevail on the motion, they provide no statutory basis for this request, and "there is no provision in the Federal Arbitration Act … that awards attorney's fees to a party who is successful in pursuing a motion to compel arbitration or in defeating a motion to compel arbitration." *Am. Reliable Ins. Co. v. Stillwell*, 212 F. Supp. 2d

621, 634 (N.D.W. Va. 2002), *aff'd*, 336 F.3d 311 (4th Cir. 2003). Accordingly, the undersigned recommends denying Defendants' request for attorney's fees.

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **DENY** Defendants' Motion to Compel Arbitration, Dkt. 22. **IT IS FURTHER ORDERED** that this case be removed from the Magistrate Judge's docket and returned to the docket of the United States District Judge.

## V.    WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED July 17, 2024.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE