IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| COLTON JACOB, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:23-cv-1179-DII |
| STEWARD PARTNERS GLOBAL ADVISORY, LLC, et al. | § § § § | |
| Defendants. | § § | |

### ORDER

Before the Court is the report and recommendation of United States Magistrate Judge Dustin Howell concerning Defendants Steward Partners Global Advisory, LLC ("SPGA") and Steward Investment Solutions, LLC's ("SPIS") (collectively, "Defendants") motion to compel arbitration, (Dkts. 20, 22).[1] (R. & R., Dkt. 32). Defendants timely filed objections to the report and recommendation. (Objs., Dkt. 36). Colton Jacob and Vincent Conor Fuchs ("Plaintiffs") filed a response to Defendants' objections on September 20, 2024. (Dkt. 40). Having considered the parties' briefs, the evidence, and the relevant law, the Court finds that the motion should be granted.

### I. BACKGROUND

Plaintiffs are financial advisors registered with the Financial Industry National Regulatory Authority ("FINRA"), the self-regulatory body for financial services and investment industry authorized by the U.S. Securities and Exchange Commission to regulate member firms and associated persons. (Dkt. 1, at 2). On or about October 20, 2020, Plaintiffs transitioned their financial advisory business to Defendant SPGA. (Mot. Compel Arb., Dkt. 22, at 5). As part of their

---

[1] These citations are to redacted and unredacted versions of Defendants' motion to compel arbitration.

1

transition, Plaintiffs became subject to the terms of several agreements governing aspects of their employment relationship.

First, Plaintiffs signed Steward Partners Management Holdings, LLC's Operating Agreement ("Operating Agreement"), which provides:

> 16.12 Arbitration
>
> (a) Any dispute, claim or controversy between or among Members and/or Associated Persons (as defined in the FINRA Code), and/or certain others, arising in connection with the business of such Member(s) or in connection with activities of such Associated Person(s), relating primarily to or arising with respect to FINRA, shall be submitted to FINRA arbitration under the FINRA Code…. (b) Any dispute, claim or controversy between or among Members and/or Associated Persons other than those subject to Section 16.12(a) will be submitted to arbitration under the rules of the American Arbitration Association ("AAA") in New York City, NY, which will be the only forum for the resolution of disputes arising hereunder . . . .

(Resp. Mot. Compel Arb., Dkt. 26, at 5).

Plaintiffs also executed FINRA Form U-4, in which they agreed to "arbitrate any dispute, claim or controversy that may arise" between Plaintiffs and SPGA. (Mot. Compel Arb., Dkt. 22, at 2).

In addition, Plaintiffs signed the 2020 Wealth Manager Guide, which does not include an arbitration clause. The Guide provides:

> This Guide supersedes all previous Guides between the Firm and its employees and constitutes the entire agreement between the Firm and its employees regarding the Wealth Manager Guide and/or the subject matter thereof. To the extent that there is any conflict between this Guide and any other plan or agreement, express or implied, this Guide shall control.

(Dkt. 24-8, at 5).

Finally, Plaintiffs signed Financial Advisor Employment Agreements ("2020 Employment Agreements"), which provide for arbitration before FINRA or under the rules of the American Arbitration Association ("AAA"):

> (h)(i) Any dispute, claim or controversy between or among the FA and/or Associated Persons (as defined in the FINRA Code), and/or any others, arising in connection with the business of the FA or in connection with activities of such Associated Person(s), relating primarily to or arising with respect to FINRA, shall be submitted to FINRA arbitration under the FINRA Code. Each party will bear its own expenses of arbitration and will jointly and equally bear the expense of the FINRA arbitration. However, the arbitrator will have the discretion to award the prevailing party reasonable fees, including reasonable attorney's fees and expenses arising from the arbitration . . . .
>
> (ii) Any dispute, claim or controversy concerning this Agreement other than those subject to Section 5(h)(i) will be submitted to arbitration under the rules of the American Arbitration Association ("AAA") . . . .

(Mot. Compel Arb., Dkt. 22, at 117).

The 2020 Employment Agreements were superseded by new Employment Agreements in 2022 ("2022 Employment Agreements"). (Mot. Compel Arb., Dkt. 22, at 4). Like the 2020 Employment Agreements, the 2022 Employment Agreements provide for arbitration before FINRA or under AAA rules:

> (h) (i) Any dispute, claim or controversy between or among the FA and/or Associated Persons (as defined in the FINRA rules and regulations), and/or any others, arising in connection with the business of the FA or in connection with activities of such Associated Person(s), relating primarily to or arising with respect to FINRA, shall be submitted to FINRA arbitration under the FINRA rules and regulations. Each Party will bear its own expenses of arbitration and will jointly and equally bear the expense of the FINRA arbitration. However, the arbitrator will have the discretion to award the prevailing Party reasonable fees, including reasonable attorney's fees and expenses arising from the arbitration. . . .
>
> (ii) Any dispute, claim or controversy concerning this Agreement other than those subject to Section 8(h)(i) will be submitted to arbitration under the rules of the American Arbitration Association ("AAA") in New York, New York, which will be the only forum for the resolution of disputes arising hereunder. . . . Arbitration expenses will be born equally by the Parties, provided however, that the deciding arbitrator(s) may decide that a Party is entitled to recover its arbitration expenses incurred and its corresponding reasonable attorneys' fees and include such amounts in the arbitration award.

3

(Mot. Compel Arb., Dkt. 22, 68–69).

Furthermore, the 2022 Employment Agreements provide that Plaintiffs are employed on an "at-will" basis and make clear that the employment relationship "may be terminated by the Parties any time with or without reason." (Resp. Mot. Compel Arb., Dkt. 24-2, at 19). Equity and benefits may also be modified at any time by Defendants in their sole discretion. (*Id.*). The agreements also specify that in the event of "any conflict between this Agreement and any other document entered into by" the parties, "this Agreement shall control." (Mot. Compel Arb., Dkt. 22, at 4). Finally, the agreements require Plaintiffs to indemnify Defendants for all "Losses" that "arise out of or are related to the . . . FA's [financial advisor] breach of any of the FA's obligations under this Agreement." (*Id.* at 115–116).

In connection with the 2022 Employment Agreements, the parties signed an Asset Growth Agreement and an Equity Transfer Agreement in May 2022. (Resp. Mot. Compel Arb., Dkt. 24-2, at 5). Neither the Asset Growth Agreement nor the Equity Transfer Agreement contain arbitration clauses. In these agreements, the parties agree to be governed by the "internal laws of the State of New York without regard to any conflict of laws provisions that would require the application of the laws of any other jurisdiction." (Mot. Compel Arb., Dkt. 22, at 57, 141).

Additionally, Plaintiffs executed Financial Advisor Bonus Agreements ("Bonus Agreements"), which describe Plaintiffs' eligibility for a bonus and provide that "[o]ther factors may render the FA ineligible as determined by Steward Partners in its sole and absolute discretion." (*Id.* at 97). The 2022 FA Bonus Agreements contain an arbitration clause:

> The Parties agree that (a) any dispute, claim or controversy between or among the FA and/or Associated Persons (as defined in the FINRA rules and regulations), and/or any others, arising in connection with the business of the FA or in connection with activities of such Associated Person(s), relating primarily to or arising with respect to FINRA, shall be submitted to FINRA arbitration under the FINRA rules and regulations. . . . (b) any dispute, claim or controversy concerning this Bonus Agreement other than those subject to clause

4

> (a) above will be submitted to arbitration under the rules of the American Arbitration Association ("AAA") in New York, New York, which will be the only forum for the resolution of disputes arising hereunder.

(*Id.* at 98). The agreement also provides that it is "not an employment contract or an agreement to employ the FA for a specified period of time or a promise of continued employment with Steward Partners for any period of time whatsoever." (*Id.*).

On or about February 9, 2023, Plaintiffs filed an arbitration action before FINRA against Defendants, which remains pending. (*Id.* at 6). In the FINRA arbitration, Plaintiffs assert various claims, including wrongful termination, breach of contract, and defamation. (*Id.*) On September 28, 2023, Plaintiffs filed this complaint, alleging that Defendants had violated the Fair Labor Standards Act's ("FLSA") minimum wage requirements. Defendants moved to compel Plaintiffs to arbitration on January 5, 2024, pursuant to the terms of the arbitration clauses in the agreements. Defendants argue that the case should be submitted to arbitration before FINRA, or in the alternative, under the rules of the AAA. (*Id.* at 7). Defendants also request attorney's fees arising from their motion to compel, pursuant to the indemnification clause in the 2022 Employment Agreements. (*Id.*)

In response to Defendants' arguments on FINRA arbitration, Plaintiffs point to a purported conflict in the agreements—because some of the agreements contain FINRA arbitration clauses while others do not, the parties failed to reach a "meeting of the minds" on arbitration. (Resp. Mot. Compel Arb., Dkt. 24-2). Because Plaintiffs never agreed to arbitrate their claims before FINRA, they may not be compelled to do so. As for AAA arbitration, Plaintiffs argue that the agreements to arbitrate are illusory and unenforceable because they give Defendants sole discretion to terminate or alter the terms of Plaintiffs' employment. (*Id.* at 3-4). Plaintiffs did not specifically respond to Defendants' request for attorney's fees.

On April 1, 2024, the Court referred Defendants' Motion to Compel Arbitration to the assigned magistrate judge for a report and recommendation. On July 17, 2024, the magistrate judge

5

issued a report and recommendation, recommending that the motion to compel arbitration be denied. (R. & R., Dkt. 32, at 15). First, the magistrate judge agreed with Plaintiffs that the agreements materially conflicted with respect to FINRA arbitration. (*Id.* at 9). Specifically, the magistrate judge relied on: (1) the Wealth Manager Guide, which contains no arbitration provision; (2) the Asset Growth and Equity Transfer Agreements, which also contain no arbitration provision; and (3) the employment provision in the Bonus Agreement, which the magistrate judge interpreted as carving out FLSA claims from the agreement's arbitration clause. (*Id.*) Second, on AAA arbitration, the magistrate judge explained that arbitration agreements that give a party the sole power to modify the employment relationship are illusory. (*Id.* at 12). He then found that the 2022 Employment Agreements, which state that the agreements "may not be altered . . . without written consent of the parties," conflict with other portions of the agreements, which give Defendants the discretion to modify compensation terms. (*Id.* at 12–13). The conflicting provisions create an ambiguity that the magistrate judge construed against Defendants, the drafters of the agreements, to conclude that the agreement to arbitrate was illusory and unenforceable. Third, the magistrate judge explained that even if Defendants had prevailed, the magistrate judge would have declined to grant attorney's fees because such fees are not available under the Federal Arbitration Act ("FAA"). (*Id.* at 14–15).

Defendants filed objections to the report and recommendation on September 5, 2024. (Objs., Dkt. 36). In their objections, Defendants argue that the agreements are all subject to the same arbitration terms as the 2022 Employment Agreements. (*Id.* at 2). Additionally, they argue that the magistrate judge mistakenly relied on unrelated terms in the agreements to find ambiguity—in reality, the terms do not create an ambiguous or illusory agreement to arbitrate. (*Id.* at 3). Finally, Defendants reiterate that their request for attorney's fees is based not on the FAA but rather the

2022 Employment Agreements. Defendants also argue Plaintiffs waived any objections by failing to respond to Defendants' initial request. (*Id.*).

## II. LEGAL STANDARDS

### A.  Report and Recommendation

The Federal Rules of Civil Procedure authorize magistrate judges to make findings and recommendations for dispositive motions. Fed. R. Civ. P. 72(b)(1). For dispositive motions, parties are entitled to *de novo* review of any part of a magistrate judge's report and recommendation that has been properly objected to. Fed. R. Civ. P. 72(b)(3). The district judge has the discretion to "accept, reject, or modify the recommended disposition." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(c).

### B. Motion to Compel Arbitration

The FAA permits a party to file a motion to compel arbitration based on "the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration." 9 U.S.C. § 4. "Enforcement of an arbitration agreement involves two analytical steps. The first is contract formation—whether the parties entered into any arbitration agreement at all. The second involves contract interpretation to determine whether this claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Services, Inc.*, 830 F.3d 199, 201 (5th Cir. 2016).

Federal policy favors arbitration and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24 (1983) (citations omitted). But the "liberal federal policy favoring arbitration" "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties, which is governed by ordinary state-law [contract] principles." *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2022). In Texas, state law

7

requires "acceptance and a meeting of the minds on all essential elements." *Principal Life Ins. Co. v. Revalen Dev., LLC*, 358 S.W.3d 451, 454–55 (Tex. App.— Dallas 2012, pet. denied).

## III. DISCUSSION

Because Defendants timely objected to the magistrate judge's report and recommendation, the Court reviews the report and recommendation *de novo*.

### A. FINRA Arbitration

#### 1. The parties entered a valid agreement to arbitrate.

To start, the Court addresses whether the parties created a valid agreement to arbitrate. Plaintiffs argue that the agreements materially conflict with respect to arbitration, precluding a "meeting of the minds" between the parties. They note that (1) the Wealth Manager Guide, which purports to supersede other employment agreements in case of conflict, contains no arbitration clause, (2) the Asset Growth Agreement and Equity Transfer Agreement contain no arbitration clause but rather provide that any conflict be governed by the "internal laws of the State of New York," and (3) the Bonus Agreement's employment provision "carves out" FLSA claims from that agreement's arbitration clause.

First, the Court does not find a conflict between the Wealth Manager Guide and the 2022 Employment Agreements. "Under general principles of contract law, separate agreements executed contemporaneously by the same parties, for the same purposes, and as part of the same transaction, are to be construed together."[2] *Personal Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 393 (5th Cir. 2002). When provisions potentially conflict, courts must interpret provisions "in the context of the entire contractual arrangement and . . . give effect to all the terms of the arrangement. *Id.* To do so, courts consider whether conflicting provisions can be "harmonized." *See O'Shaughnessy v. Young*

---

[2] Although Plaintiffs are correct in noting that *Motorola* more squarely addresses the *scope* of an arbitration agreement, not whether an agreement to arbitrate was created in the first place, (Resp. Objs., Dkt. 39-1, at 17), *Motorola*'s explanation of contracting principles is instructive here.

8

*Living Essential Oils, L.C.*, 810 Fed. App'x 308, 312 (5th Cir. 2020). Here, the parties executed a variety of agreements governing the employment relationship and compensation. These agreements should be read together to give effect to each term.

Plaintiffs argue that this case follows *O'Shaughnessy v. Young Living Essential Oils, L.C.*, an unpublished Fifth Circuit opinion that found no "meeting of the minds" on arbitration because several agreements conflicted. 810 F. App'x at 311. In that case, the plaintiff had signed a Member Agreement that contained a "Jurisdiction and Choice of Law" clause requiring "[a]ny legal action concerning the Agreement [to] be brought in the state and federal courts" of Utah. *Id.* at 309. Like both the Wealth Manager Guide and the 2022 Employment Agreements, the Member Agreement contained a "merger clause" clarifying that it superseded all other agreements between the parties. *Id.* In addition, the agreement incorporated by reference a policies and procedures ("P&Ps") document, which contained an arbitration clause covering "any controversy arising out of or relating" to the agreement, and a compensation plan, which was silent on arbitration. *Id.* The defendant sought to compel arbitration pursuant to the arbitration clause in the P&Ps. *Id.* at 310. Finding that the P&P arbitration clause presented a "direct" conflict with the "Jurisdiction and Choice of Law" clause, the Fifth Circuit concluded there was no "meeting of the minds" on arbitration and affirmed the district court's denial of the motion to compel. *Id.* at 312, 314. Plaintiffs argue that here, like in *O'Shaughnessy*, the differences between their agreements preclude contract formation.

Unlike *O'Shaughnessy*, however, the agreements do not directly conflict. *O'Shaughnessy* considered one agreement that directed "[a]ny legal action" to state and federal courts and another that directed "any controversy" to arbitration. *Id.* at 309. The broad language of these provisions meant that they "irreconcilably conflicted." *Id.* at 312. The cases relied on by the Fifth Circuit in *O'Shaughnessy* present similar conflicts. In *Bellman v. i3Carbon, L.L.C.*, the Tenth Circuit found no "meeting of the minds" where one agreement contained an arbitration clause and another required

9

disputes to be adjudicated by a "court of competent civil jurisdiction in Denver." 563 Fed. App'x 608, 610 (10th Cir. 2014). Similarly, in *Summit Contractors, Inc. v. Legacy Corner L.L.C.*, the Tenth Circuit found no "meeting of the minds" where one agreement required arbitration of any claim arising from the contract and another required such claims to be brought in an Oklahoma City court. 147 F. App'x 798 (10th Cir. 2005). In those cases, the arbitration and forum selection clauses directly conflicted—claimants cannot follow one without violating the other. The Wealth Manager Guide, on the other hand, is silent on whether disputes should be resolved in court or through arbitration. This silence can be harmonized with the arbitration provisions in the 2022 Employment Agreements to give effect to all the terms—the more specific provisions in the 2022 Employment Agreements control when other agreements are silent on arbitration. Lastly, although the Wealth Manager Guide purports to "supersede" other agreements, it was signed in 2020, (Dkt. 24-8), and is therefore superseded by the arbitration clauses in the more recently executed 2022 Employment Agreements. (Dkt. 22, at 4).

Second, the Court finds no conflict between the Asset Growth and Equity Transfer Agreements and the 2022 Employment Agreements. The Asset Growth and Equity Transfer Agreements provide that disputes will be governed by the "internal laws of the State of New York" but do not direct disputes to courts of that state. These agreements are unlike the Member Agreement in *O'Shaughnessy*, which, in addition to a choice-of-law clause, also contained a forum-selection clause directing all disputes to New York courts. *Id.* at 309. The choice-of-law clause here merely "make[s] applicable state rules governing the conduct of arbitration." *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 476 (1989). Furthermore, these facts are the opposite of those in *O'Shaughnessy*. In that case, the court declined to give effect to the arbitration clause in the P&Ps when the main Member Agreement, which superseded all other agreements, directed all disputes to state and federal courts. 810 F. App'x at 311. Here, on the other hand, the main documents—the 2022 Employment

10

Agreements—direct disputes to arbitration. The choice-of-law language appears only in documents that do not purport to supersede other agreements in case of conflict. Because the Asset Growth and Equity Transfer Agreements do not override other agreements, these documents can be harmonized with the 2022 Employment Agreements.

Third, the Court finds no conflict between the Bonus Agreement and the 2022 Employment Agreements. Plaintiffs argue that the Bonus Agreement's "at-will" employment clause, stating that the agreement is "not an employment contract or an agreement to employ the FA for a specified period of time" carves out FLSA claims from that agreement's arbitration clause. (Resp. Mot. Compel Arb., Dkt. 24-2, at 12–13). Even if that were true, that reasoning applies only to the arbitration clause in the Bonus Agreement, not the 2022 Employment Agreements, which Defendants principally rely on. The clause also appears only among the Bonus Agreement's general provisions and has little bearing on the agreement's arbitration clause. Furthermore, the at-will employment provision cannot be read to invalidate the arbitration clause. In *Flores v. BJ's Restaurant Operations Co.*, the Fifth Circuit expressly refused to invoke an at-will employment clause to nullify an agreement to arbitrate, holding that an at-will employment does not render an arbitration agreement illusory or unenforceable, particularly because the agreement survives the employment relationship and provides an avenue for redress for employment claims. No. 23-50038, 2023 U.S. App. LEXIS, 26711, *5 (5th Cir. October 6, 2023). The Texas Supreme Court in *In re Whataburger Restaurants, LLC* likewise enforced an arbitration agreement over at-will employment terms, reasoning that "context matters when interpreting a contract," and text cannot be read in isolation. 645 S.W.3d 188, 197–98 (Tex. 2022) (internal citations omitted). These authorities suggest that the at-will employment clause does not create a conflict between the Bonus Agreement and the arbitration clause in the 2022 Employment Agreements.

11

Finally, Plaintiffs argue that the agreements, at the very least, demonstrate ambiguity with respect to arbitration. This ambiguity should be construed against Defendants, who drafted the contracts. This Court, however, finds no ambiguity in the contract language and therefore concludes that the parties reached an "meeting of the minds" on arbitration.

2. The agreement to arbitrate covers Plaintiffs' FLSA claims.

Having determined that the parties entered into an agreement to arbitrate, the Court now considers whether the arbitration clause covers Plaintiffs' FLSA claims. The 2022 Employment Agreements require arbitration for "[a]ny dispute, claim or controversy between or among the FA and/or Associated Persons . . . arising in connection with the business of the FA or in connection with activities of such Associated Person(s), relating primarily to or arising with respect to FINRA." (Mot. Compel Arb., Dkt. 22, 68–69). In turn, Plaintiffs question whether the FLSA claims "relat[e] primarily to or aris[e] with respect to FINRA." (R. & R., Dkt. 31, at 8).

The Court rejects this argument and finds this dispute falls within the text of the clause. According to FINRA rules, an Associated Person is defined as any "natural person registered under the rules of FINRA." FINRA Rule 13100(a), (r). Plaintiffs are both registered under the rules of FINRA and therefore meet the definition. As for the subject matter of the dispute, the arbitration clause is broad, covering disputes arising "in connection with the business of the FA." It is well-established that such broad arbitration terms constitute an agreement to arbitrate. *See Pennzoil Expl. And Prod. Co. v. Ramco Energy Ltd.,* 139 F.3d 1061, 1067 (5th Cir. 1998) (holding that a broad arbitration clause "embraces all disputes between the parties having a significant relationship to the contract," and compels arbitration for disputes that "relate to" or "are connected with" a contract). And if that weren't enough, FINRA rules also provide that any "dispute aris[ing] out of the business activities of a [M]ember or an [A]ssociated [P]erson and is between or among: Members; Members and Associated Persons; or Associated Persons" is necessarily a dispute governed by FINRA.

12

FINRA Rule 13200(a); *see Wealth Rescue Strategies, Inc. v. Thompson*, No. CIV. A. H-08-3107, 2009 WL 3878083, at *2 (S.D. Tex. Nov. 17, 2009) (applying this reasoning to hold that the arbitration clause in FINRA Form U-4, executed by the parties, mandates arbitration before FINRA). Accordingly, the Court finds that Plaintiffs' FLSA claims fall under the parties' arbitration agreement. The Court will grant Defendants' motion to compel arbitration.[3]

### B. Attorney's Fees

Defendants argue that they are entitled to reasonable attorney's fees and costs under the 2022 Employment Agreements, which require Plaintiffs to indemnify Defendants for "Losses" arising out of Plaintiffs' breach or failure to perform their obligations under the agreements. (Mot. Compel Arb., Dkt. 22, at 5–6). According to Defendants, Plaintiffs' failure to submit the claim to arbitration in accordance with the 2022 Employment Agreements constituted a breach. (Objs., Dkt. 36, at 20). Defendants also argue that Plaintiffs waived this argument by failing to address it in their response to the motion to compel arbitration. (*Id.*).

Defendants, however, have not put forth a statutory basis for their request. As the magistrate judge explained, the FAA does not provide for attorney's fees. (R. & R., Dkt. 31, at 14) (quoting *Am. Reliable Ins. Co. v. Stillwell*, 212 F. Supp. 2d 621, 634 (N.D.W. Va. 2002), *aff'd*, 336 F.3d 311 (4th Cir. 2003)). An order compelling arbitration is "merely a preliminary procedural order that is not on the merits and does not materially alter the legal relationship of the parties [and] does not make the litigant obtaining the order a prevailing party for purposes of a fee award." *Perry v. NorthCentral U., Inc.*, CV-10-8229, 2012 WL 1753014, at *1 (D. Ariz. May 16, 2012).

Defendants' contract-based arguments are similarly unavailing. The Court finds the Northern District of California's opinion in *Advent Envtl. Consulting, LLC v. Jotform Inc.* particularly

---

[3] Because the Court grants Defendants' motion to compel arbitration before FINRA, it declines to address Defendants' argument in the alternative that Plaintiffs should be compelled to arbitrate under the rules of the AAA.

13

persuasive here. No. 21-CV-06639, 2022 WL 18485 (N.D. Cal. Jan. 3, 2022). There, defendants also relied on a broad provision requiring the plaintiffs to "indemnify" the defendants "from and against any and all fees . . . as a result of or arising from a violation of these Terms." *Id.* at *1. The district court denied the defendants' motion for attorney's fees for several reasons. First, the defendants relied on a "general provision entitling the parties to fees arising from the violation of a contract," rather than "specific language" providing for the award of attorney's fees to the party that succeeds on a motion to compel arbitration. *Id.* at *2. The indemnification clause in the 2022 Employment Agreements is similar, requiring Plaintiffs to indemnify Defendants for all "Losses" that "arise out of or are related to the . . . FA's breach of any of the FA's obligations under this Agreement." (Mot. Compel Arb., Dkt. 22, 115–116). It is unclear whether this provision applies to fees arising from a motion to compel arbitration, or whether Plaintiffs have breached the contract at all. Arguably, this ambiguity should be resolved against Defendants. *Advent Envtl. Consulting*, 2022 WL 18485, at *1.

Second, it is "not obvious that filing a lawsuit in the face of an arbitration agreement" when the party believes in good faith that the arbitration clause does not apply to their claim (or that the agreement is invalid) "is a 'violation' of the contract." *Id.* Here, Plaintiffs seemingly believed in good faith that they had failed to reach a "meeting of the minds" with Defendants on arbitration, or that their FLSA claims do not fall within the scope of the arbitration clause. Because it is unclear that Plaintiffs have breached the contract, the Court declines to award attorney's fees under the 2022 Employment Agreements' broad indemnification clause.

Finally, because Plaintiffs requested the Court to deny Defendants' motion in its "entirety," they have not waived their argument regarding fees. (Objs., Dkt. 36, at 26).

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendants' objections to the report and recommendation are **SUSTAINED**. The report and recommendation of United States Magistrate Judge Dustin Howell, (R. & R., Dkt. 32), is **REJECTED** in accordance with this order.

**IT IS FURTHER ORDERED** that Defendants' motion to compel arbitration, (Dkts. 20, 22), is **GRANTED**. **IT IS FURTHER ORDERED** that Defendants' motion for attorney's fees is **DENIED**.

**IT IS FINALLY ORDERED** that Plaintiffs' claims are **DISMISSED without prejudice**.

The Court will enter final judgment by separate order.

**SIGNED** on September 27, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE